Thank you. Good morning, Your Honors. Gretchen Fusilier on behalf of Appellant Petitioner Sandy Brooks. If it please the Court. This appeal arises out of the denial of Mr. Brooks' federal habeas corpus petition in which he claimed a violation of his due process rights in the calculation of his earliest possible release date from prison. However, Mr. Brooks has currently or has been released from incarceration. However, he remains on parole. And, of course, his petition survives his release from prison, according to federal state precedent. Mr. Brooks' position is that he was denied a hearing as required under California mandates, as well as a full reinstatement of all of his forfeited credit work time in prison. Now, in your briefs, you indicate that one of the arguments raised was that he was denied a hearing. But in all of the documents I saw below, the argument was that he had a liberty interest in having a correct calculation of his sentence. There was no indication that he was denied a hearing. In fact, he indicates on his various habeas petitions that he exhausted his administrative remedies, that he went through the administrative process. So, is that a claim of a denial of a hearing? Was that exhausted below? And, if so, where? Well, according to the Ninth Circuit's order entered July of 2005, in which Mr. Brooks sought a certificate of appealability to bring a second and successive petition for habeas corpus, the Ninth Circuit entered its order indicating that because this was his first challenge to the his habeas corpus, federal habeas corpus, was not contingent on his receipt of the certificate of appealability. And addressing the And address her question. Yes. If that has something to do with the question. Yes. In addressing your question, the habeas corpus that was filed by Mr. Brooks in the California Superior Court in 2002 raised two claims. One was that the trial court imposed an unauthorized sentence. And second, the denial of the restoration of approximately 1,051 days by the Department of Corrections. He did indicate in one brief sentence in the pro forma petition for habeas corpus as a last sentence that the miscalculation is a violation of his 14th Amendment in due process. Right. But that was focusing on the miscalculation, which is consistent throughout his pleadings. He's focusing on the calculation was an error. That is correct, Your Honor. However, in looking at the attachments as exhibits that Mr. Brooks had to his Superior Court habeas corpus petition, he had attached the second-level appeals directive indicating that he was, in fact, denied a hearing and was entitled to one. Although there are no records that I have been able to determine in the State Lodge documents that such a hearing was actually accorded to him. But we don't know it wasn't, either. I mean, I saw it. That's correct. So that, we have that information. We don't know what happened, whether a hearing was given to him. But he doesn't raise that to the State Court or to the District Court as his issue. So it wasn't, I guess I'm hearing you say that it wasn't actually exhausted. Well, it appears as though he may have attempted to raise it, but as an in propia persona litigant, he was ill-equipped to fully raise that issue. And by attempting to raise it, you're referring only to the fact that he attached the director's report or decision saying that he should get a CRH hearing. Is that correct? That's correct, Your Honor. And I think there was other very terse language indicating that he was entitled to a hearing, that he was denied. Let me go ahead. I cannot argue that there is no significant briefing by Mr. Brooks at the State level to justifiably or to subjectively or objectively determine that this was thoroughly litigated in the Superior Court. I would also indicate that the California Superior Court's order denying the habeas corpus was a very terse one brief sentence indicating that the computer-generated calculation was more reliable, although Mr. Brooks had submitted documentation from one of the records analysts from the California Department of Corrections that because of a reprogramming of a computer, the maximum release date component in the calculus to determine the earliest possible release date was erroneous. Go ahead. But the calculation is really a California law decision, not one of ours. That's correct, Your Honor. And although it would seem to me, and I want to change to the second issue, because not only didn't I find that this particular claim was raised before, but I don't find anything where the federal ex post facto clause claim was raised any place in the lower courts. No, it wasn't. And that was raised under Ninth Circuit rules that uncertified issues could be raised if additional issues were. But it seems to me that somebody needs to raise them in the lower courts or suggest what exception it might meet in order to make it in my court. Well, Your Honor, you will see in our conclusion that we are requesting a remand back to the court for a full evidentiary hearing so that we have sufficient information to actually make a cogent review of the lower courts' rulings. Counsel, Judge Gould with a question for you, if I may, please. We do review issues that aren't certified from the lower court and sometimes will expand the certification. But we very rarely will consider an issue that was not raised in the district court. There are some exceptions to that, but it seems to me if you are arguing a point that was not argued to the district court, then I would ask you to tell me which exception you think this comes under as to why we should consider it. Yes. As we argued in our brief, although it was not raised in the lower court, we do think that it would fall under the plain error exception. And that is based on the fact that the pre-1998 amendment to the California Code of Regulations that removed the mandatory reinstatement of credits became, after the 1996 amendment's effective date, it became discretionary by the director to implement a program so that within their discretion, credits would be reinstated. And it is within that exception that we have raised the issue. However, the decision that was rendered by those determining the credit talks about entering it pursuant to the law prior to the amendment. If you read what it says, it says inmate Brooks received a total of only 100 days of restoration due to the fact that this disciplinary was a Division A-1 offense. And he's not entitled to restoration of the remaining 180 days, which prior to its amendment in 1996 provided. So it didn't go on post-1996 law, but prior to 1996 law. Well, Your Honor, although that language is in there, we would argue that Mr. Brooks, notwithstanding, was entitled to a hearing. And the denial of a hearing or, as you indicated, we may not be absolutely certain that a hearing was denied him. But from the records that is before this Court on Appeal, there does not appear to have been a hearing that was accorded him so that he would have been able to fully challenge that calculation. Counsel, let me just ask a further practical question. Can you explain the significance of this appeal to Mr. Brooks now? I realize it's not technically moot if the resolution could affect his parole or has some other collateral consequence. But most of the arguments related to his release date, and he's been released. So what is the effect of this case on him? The effect, Your Honor, would be that because he is still limited by the conditions of parole, if there was or if there were an error in the calculation of the earliest possible parole date, that would carry over and instead of just or correcting the error to release him from prison, it would be corrected by an early termination from parole. And from a practical standpoint, that is what Mr. Brooks is seeking to obtain. Your time has expired. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Charles Chung for the Respondent. This case is fairly simple. The issue is whether there was a miscalculation of Petitioner's release date, which was calculated to be May 22, 2006. That release date is accurate because, contrary to Petitioner's claims, all of the credits that could have been restored under state law were restored. And that the only forfeited credits that were applied towards his calculated release date were the 180 credits stemming from the A-1 offense in 1989. Can I ask you about the nature of the state court's determination? The state court had a very short ruling. We agree with the government's calculation. Is that a factual determination, just the calculation, or is it really a legal determination because it requires the application of the regulations to Mr. Brooks' time? Your Honor, that would be both a factual and legal determination, a factual determination as to the accuracy of the record before the court, as well as the application of the appropriate laws applicable to those calculations. So assuming that we're reviewing that under the AEDPA standard, with respect to the factual component of it, then are we bound by, I guess it's 2254 D-2, looking at whether it's just unreasonable? Or are we looking at, because it's a mixed issue of law and fact, are we looking at whether there's Supreme Court precedent? Well, Your Honor, to the extent that the petitioner argues that the legal analysis is contrary to an unreasonable application of clearly established federal law, there would have to be some Supreme Court holding that applies to that. But to the extent that the state superior court did make a factual determination, the court would be applying the D-2 provision that the state court's factual determinations must be unreasonable for there to be relief. As far as can be determined in the pleadings, there has not been, the petitioner has not presented which Supreme Court holding is controlling here. The issue here is the restoration of credits. And there is no Supreme Court holding that governs that issue. So really the only claim here is the D-2. Is there an unreasonable, was the decision based on an unreasonable determination of the facts? And looking at the record here, there is not an unreasonable determination of the facts. In fact, the record supports or affirmatively shows that that release date is accurate, that all of the credits that petitioner had restored were applied towards the release date. So the claim, the only possible claim here, and it's not clear from petitioner's statements as to what he believes the inaccuracy comes from. The only possible claim is that those 180 days of credits that were applied against the release date as forfeited credits should have been restored. And that is a question solely of state law. That is, was there a state regulation governing the restoration of credits? And did the Department of Corrections apply that regulation or comply with those regulations in not restoring those credits? And since it's a matter of state law, as the district court found, there is no issue for resolution by this court. Now, if it was, if there is somehow a federal law governing that, looking at the record, whether there is an unreasonable determination of facts, or rather what the state regulations state, the state regulations in place at the time of the offense, which was a 1981 assault, a 1989 assault, the Department of Corrections, as the court noted, applied the pre-1996 state regulations. And those regulations clearly stated that for an A-1 offense, 180 days of credits shall not be restored. So for that 1989 A-1 offense, petitioner had 360 credits revoked. At a restoration hearing, I believe around 2000, he had a total of 180. Half of those credits were restored. And because state law prohibited it, as was explained in the Stacey Wilkins declaration, the remaining 180 were not restored, could not be restored under state law. So there really is no basis for the claims in this appeal regarding whether he was denied a hearing. As the court mentioned, it wasn't exhausted. Whether the petitioner can raise new claims on appeal that were not certified or whatnot is effectively irrelevant, because the court is bound by AEDPA, and AEDPA requires exhaustion of claims. And petitioner has presented no arguments why that unexhausted claim should be exempted from AEDPA. Now, whether attaching a document talking about a hearing from the director presents or has exhausted the claim, as the court is aware, exhaustion requires that the highest court of the state have a fair opportunity to consider the claim. So attaching a document that happens to mention a hearing as an exhibit, I would argue, does not give the California Supreme Court a fair opportunity to litigate or to even consider the claims whether he was denied a hearing or not. There is a factual question whether he was in fact denied a hearing, should the court consider the claim. But that's ultimately of no matter here, because the purpose of a hearing is to make sure that the calculated release date is accurate. And there is simply no basis by law or in the facts to show that there was any inaccuracy. So if we're under AEDPA review, we were to determine that the state court made no legal or factual error under the AEDPA standard of review, then Brooks would not have been deprived of any time, so the question of a hearing would be irrelevant. Is that what you're saying? That is correct, Your Honor. And as the court noted regarding the ex post facto claim, that was also unexhausted. But if the court were to consider it, there is absolutely no basis that the Department of Corrections applied the post 1996 regulations, which if the department had, the petitioner would have had none of the 360 credits for the A1 offense restored. So the calculation worksheet would have shown 360. But as explained in the declaration, half of those were actually restored, and that is what was permitted in the pre-1996 state regulations. I have no questions. No questions here. Thank you, Your Honor. I think your time was up, so are there any more questions for the appellant? No, no. I have no questions. All right. The case of Brooks v. Poulos is submitted. And we'll next hear the case of Plush Lounge, Las Vegas, LLC v. Hotspur Resorts, Nevada, Inc. And mine are correct.
judges: Gould, Ikuta, Smith N. R.